UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
FAUSTINO MORALES MIRANDA,    :
    :
    Plaintiff,    :
    :    **REPORT AND**
    -against-    :    **RECOMMENDATION**
    :    19-CV-02923 (EK) (PK)
ASTORIA PROVISIONS, LLC (d/b/a    :
ASTORIA PROVISIONS), JOHN    :
PARLATORE, RICHARD OHRSTROM III,    :
and MANNY DOE,    :
    :
    Defendants.    :
    :
-------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Faustino Morales Miranda ("Plaintiff") brought this action against Astoria

Provisions, LLC, John Parlatore, Richard Ohrstrom III, and Manny Doe alleging violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law

("NYLL") §§ 190 *et seq.* and 650 *et seq.* (*See* Compl. ¶ 10, Dkt. 1.)

Before the Court on referral from the Honorable Eric R. Komitee is Plaintiff's Motion for

Default Judgment (the "Motion") against defendants Astoria Provisions, LLC ("Astoria

Provisions"), John Parlatore ("Parlatore"), and Richard Ohrstrom III ("Ohrstrom"), (collectively,

"Defendants").[1] (Notice of Motion, Dkt. 15.) For the reasons stated herein, the undersigned

respectfully recommends that the Motion be granted.

---

[1] The Motion does not request a default judgment against Manny Doe. (*See* Memorandum of Law ("Mem. of Law") at 1, Dkt. 20.)

## FACTUAL BACKGROUND

Astoria Provisions, a domestic limited liability corporation organized and existing under the laws of the State of New York, and individuals Parlatore and Ohrstrom owned, operated, or controlled an American Bistro at 12-23 Astoria Boulevard, Long Island City, New York 11102. (*See* Compl. ¶¶ 17-20.)

Plaintiff worked at the bistro as a dishwasher from approximately January 28, 2019 until on or about May 5, 2019. (*Id.* ¶¶ 34-35.) During that time, he worked three different schedules. From January 28, 2019 until on or about February 4, 2019, Plaintiff worked five days a week from approximately 9:30 a.m. until about 5:30 p.m., and two days a week from approximately 9:30 a.m. until about 6:30 p.m. (*Id.* ¶ 39.) During this period, he was paid a fixed salary of $700 per week. (*Id.* ¶ 43.)

From February 5, 2019 until on or about April 2019, he worked four days a week from approximately 9:30 a.m. until about 5:30 p.m., and two days a week from approximately 9:30 a.m. until about 6:30 p.m. (*Id.* ¶ 40.) From April 2019 until on or about May 5, 2019, he worked four days a week from approximately 9:30 a.m. until about 5:40 p.m. or 6:00 p.m., and two days a week from approximately 9:30 a.m. until about 7:00 p.m. (*Id.* ¶ 41.) During these latter two periods, Plaintiff was paid a fixed salary of $600 per week. (*Id.* ¶ 44.) Defendants paid Plaintiff by personal check. (*Id.* ¶¶ 42, 57.)

Throughout his employment, Plaintiff was never provided with wage statements or wage notices. (*Id.* ¶¶ 50-51.) He did not receive additional pay for any overtime hours worked. (*Id.* ¶ 55.)

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on May 16, 2019. (Dkt. 1.) Astoria Provisions was served with the Summons and Complaint via the New York Secretary of State on June 12, 2019. (Dkt. 6.) Parlatore and Ohrstrom were served at the business address of the bistro on June 25, 2019. (Dkts.

7, 8.)  When Defendants failed to respond to the Complaint, Plaintiff requested Certificates of

Default against Astoria Provisions, Parlatore, and Ohrstrom, which were entered by the Clerk of

Court on October 15, 2019.  (Dkt. 13.)  Plaintiff filed the Motion on December 27, 2019.  (Dkt. 15.)

## DISCUSSION

### I.     Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is

a default in the course of litigation.  *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn

Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of

judgment against a party who fails to defend." *Mickalis*, 645 F.3d at 128; *see also GuideOne Specialty

Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  First, when a

defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's

default. Fed. R. Civ. P. 55(a).  Then, the plaintiff must "apply to the court for a default judgment."

Fed. R. Civ. P. 55(b)(2).

"A default constitutes an admission of all well-pleaded factual allegations in the complaint

and the allegations as they pertain to liability are deemed true." *United States v. Myers,* 236 F. Supp. 3d

702, 706 (E.D.N.Y. 2017) (citations omitted).  However, "just because a party is in default, the

plaintiff is not entitled to a default judgment as a matter of right." *GuideOne*, 696 F. Supp. 2d at 208.

The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-

27, 133; (2) the plaintiff took all the required procedural steps in moving for default judgment, Local

Civ. R. 55.2(c); and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter

of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The court exercises significant

discretion in deciding whether to grant a default judgment, including whether the grounds for

default are clearly established and the amount of damages.  *See GuideOne*, 696 F. Supp. 2d at 208; *see

also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco,*

No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis,* 645 F.3d at 129.

## II.    Jurisdictional and Procedural Requirements

### A.    Jurisdiction

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis,* 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.,* 607 F.3d 951, 955 (2d Cir. 2010). The court may also inquire as to whether it has personal jurisdiction. *See Mickalis,* 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010).

Subject matter jurisdiction is found pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq. See* 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the related NYLL claims. *See* 28 U.S.C. § 1367.

"Personal jurisdiction is a necessary pre-requisite to entry of default judgment." *Piedra v. Ecua Rest., Inc.,* No. 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *4 (E.D.N.Y. Jan. 31, 2018), *R&R adopted,* 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018). This Court has personal jurisdiction over Astoria Provisions because it is a New York corporation with its principal place of business at 12-23 Astoria Blvd., Long Island City, New York 11102. (Compl. ¶ 18.) *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (alteration in original).

The Complaint does not indicate where Parlatore and Ohrstrom are domiciled. *See id.* ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") However, Parlatore and Ohrstrom may be subject to this Court's specific jurisdiction under New York's long-arm statute. *See* N.Y.C.P.L.R. § 302(a)(1) ("[A] court may exercise personal jurisdiction over any non-domiciliary . . . [who] transacts any business within the state"). By

"engaging . . . in business in this judicial district" as owners, officers, and/or agents of Astoria

Provisions (Compl. ¶¶ 19, 20), Parlatore and Ohrstrom "purposely availed themselves of the

privilege of conducting activities within the forum State, thus invoking the benefits and protection

of its laws." *Baizan Guerrero v. 79th Street Gourmet & Deli Inc.*, No. 18-CV-4761 (ARR) (ST), 2019 WL

4889591, at *3 (E.D.N.Y. Sept. 10, 2019), *R&R adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019)

(citation omitted) (quoting *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 475 (1985)).  Accordingly,

this Court has personal jurisdiction over Parlatore and Ohrstrom.

     **B.**    **Service**

     The Summons and Complaint must be properly served on the defaulting party.  *See Advanced*

*Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2

(E.D.N.Y. Sept. 20, 2013); *see also Piedra*, 2018 WL 1136039, at *4 ("If a defendant does not receive

service in compliance with . . . the Federal Rules of Civil Procedure . . . the court lacks personal

jurisdiction over the defendant").  Although "[t]he plaintiff bears the burden of proving [whether]

service was adequate[,]" affidavits of service constitute "a prima facie case of the account of the

method of service." *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL

1359218, at *3 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016)

(citing *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)) (quotations

omitted).

     Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that service may be effectuated

"following [the] state law . . . [of] the state where the district court is located." Fed. R. Civ. P.

4(e)(1).  Here, Plaintiff has made a prima facie showing of proper service of the Summons and

Complaint on Astoria Provisions by filing an Affidavit of Service through the Secretary of State

pursuant to § 306 of the New York Business Corporation Law.  (Dkt. 6.)

Under New York law, a natural person may be served by "delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served," and "mailing the summons by first class mail to the person to be served at his or her actual place of business . . . within twenty days of [the delivery]." N.Y.C.P.L.R. § 308(2).

"For service . . . to be effective, the person to whom delivery of service is made must objectively be of sufficient maturity, understanding, and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant." *Finkel v. Genergy Elec. Servs. Co., LLC*, No. 08-CV-446 (RRM), 2010 WL 8445099, at *2 (E.D.N.Y. Aug. 24, 2010), *R&R adopted*, 2012 WL 896212 (E.D.N.Y. Mar. 15, 2012) (citations, quotations, and alterations omitted). "Adult co[-]workers generally satisfy these criteria." *Id. See Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *3-4 (E.D.N.Y Feb. 14, 2017), *R&R adopted*, 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017) (finding service was proper on individual defendants who were served at their place of business by leaving the documents with a self-identified "co-worker" of suitable age and discretion); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 30 (E.D.N.Y. 2015) (finding service proper when delivered to a co-worker).

Here, Plaintiff submitted affidavits of service in which a process server stated that he delivered copies of the summons and complaint to "Mr. Alex a person of suitable age and discretion" who identified himself as a "co-worker" of Parlatore and Ohrstrom at their actual place of business at 12-23 Astoria Boulevard, Long Island City, New York, and that he also mailed the documents to their actual place of business. (Dkts. 7, 8.) Because this method of service comports with the requirements of New York law, service on Parlatore and Ohrstrom was proper.

### C.     Procedural Requirements

Plaintiff took the required procedural steps to provide proper notice to the Defendants.  He requested a Certificate of Default, which was entered by the Clerk of the Court, and notified the Defendants of the status of this action by mailing Defendants the motion papers.  (Dkts. 11, 13, 19.)

## III.   Wage and Hour Claims

### A.   General

When determining liability in a motion for default judgment, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of the Plaintiff. See *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65-66 (2d Cir. 1981); *see also Romanowicz*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

#### 1.   Employment Relationship Under the FLSA

To plead a cause of action under the FLSA, a plaintiff must establish that: (1) the defendant is an employer subject to the FLSA; (2) the plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  *See Saucedo v. On the Spot Audio Corp.*, No. 16-CV-0451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated sub nom. on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018); *see also* 29 U.S.C. §§ 203, 213.

##### a.   Defendants as Employers

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d). A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8376837, at *4.  The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or

7

business done is not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Fermin*, 93 F. Supp. 3d at 33.

Here, Astoria Provisions qualifies as an FLSA employer under enterprise coverage.  Plaintiff asserts that Astoria Provisions was "directly engaged in interstate commerce," using as an example the "numerous items [ ] used in the restaurant on a daily basis [that were] goods produced outside the State of New York." (Compl ¶ 31.)  Plaintiff thus "regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York."  (*Id.* ¶ 36.) Additionally, Plaintiff alleges that Astoria Provisions had a "gross annual volume of sales of not less than $500,000."  (*Id.* ¶ 30.)

Generally, allegations describing statutory definitions may not be sufficient to infer a nexus to interstate commerce without further proof.  However, in the context of default, the Court may accept these uncontested allegations as true and make reasonable inferences.  *See, e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011); *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012).  Accepting these uncontested allegations as true, the record in this case is sufficient to establish Astoria Provision's status as an employer for the purpose of the Motion.

Plaintiff also alleges Parlatore and Ohrstrom constitute joint employers along with Astoria Provisions.  (Compl. ¶ 24.)  To determine "whether workers are employees and [ ] whether managers or owners are employers," courts have applied the Second Circuit's "economic reality" test.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013).  The economic reality test considers whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735

F.2d 8, 12 (2d Cir. 1984).  The Court must consider the "totality of the circumstances" and no one factor is dispositive.  *Irizarry*, 722 F.3d at 110.

Here, Plaintiff alleges that both Parlatore and Ohrstrom had the power to "determine[ ] wages and compensation of the employees . . ., establish[ ] the schedules of the employees, maintain[ ] employee records, and . . . hire and fire employees."  (Compl ¶¶ 19, 20.)  These kinds of allegations, in conjunction with the defendants' default, have been found sufficient to establish an individual defendant as an employer for the purposes of finding liability under the FLSA.  *See Baizan Guerrero*, 2019 WL 4889591, at *4-5; *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *2 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

Accordingly, under the economic reality test, Parlatore and Ohrstrom are considered Plaintiff's employers and are thus individually liable for violations of the FLSA.

### b.        Plaintiff as an Employee

An "employee," under the FLSA, is broadly defined as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The statute protects "employee[s] who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

Here, Plaintiff alleges he was employed by the Defendants, and that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside of the State of New York."  (Compl. ¶¶ 34, 36.)  Based on these allegations, Plaintiff is considered an employee under the FLSA.  *See Cardoza*, 2015 WL 5561033, at *3 (finding plaintiff's allegations that he was employed by defendants sufficient to consider him an employee).

### c.      Plaintiff as a Non-Exempt Employee

Finally, Plaintiff must show that he was not exempt from the FLSA's protections.  *Fermin*, 93

F. Supp. 3d at 32.  The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and

citations omitted), but the exemptions do not include positions such as dishwashers.  *See* 29 U.S.C. §

213; *see also Cabrera v. Canela*, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019) (plaintiff who was a

dishwasher adequately pled he was an employee for the purposes of FLSA liability).  Accordingly,

Plaintiff is a non-exempt employee under the FLSA.

### 2.      Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiff must establish that his employment relationship with

the Defendants falls within the NYLL, which applies to "any person employed for hire by an

employer in any employment." N.Y. Lab. Law § 190.

Under the NYLL, employers are not required to "achieve a certain minimum in annual sales

or business in order to be subject to the law," and may be held jointly and severally liable for

violations.  *Saucedo*, 2016 WL 8376837, at *6.  Otherwise, the NYLL's definition of "employer" is

"nearly identical" to that of the FLSA, and the analysis of the employment relationship under both

statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS),

2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, No. 14-CV-4131 (ENV) (VMS),

2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are

interpreted consistently with one another on the question of employer status).

Because Plaintiff had an employer-employee relationship with the Defendants under the

FLSA, the parties also had an employer-employee relationship under the NYLL.

### B.      Specific Claims

Although the Complaint pleaded seven causes of action (*See* Compl. ¶¶ 67-95), the Motion

requests default judgment on only the overtime provisions of the FLSA and NYLL, and the wage

notice and statement provisions of the NYLL. (*See* Mem. of Law at 4-5.  *See also* Declaration of Michael Faillace in Support of Plaintiff's Motion ("Faillace Decl.") ¶ 35, Dkt. 16.)  Plaintiff also seeks liquidated damages and pre-judgment interest related to these violations.  (*Id.* at 4-6.)

### 1.  Overtime Wages

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Lab. Law §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2).  To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Here, Plaintiff alleged he worked in excess of forty hours per week throughout his employment. (Compl. ¶ 38.)  He provided the dates and times of three different schedules (each, individually, a "Pay Period") he worked while under Defendants' employ.  (*Id.* ¶ 39-41.)

From January 28, 2019 until on or about February 4, 2019, Plaintiff worked approximately 60.5 hours per week.  (*Id.* ¶ 39.)  Therefore, during this Pay Period, he worked 20.5 hours of overtime.  The length of this Pay Period was one week.

From February 5, 2019 until on or about April 2019, Plaintiff worked approximately 50 hours per week.  (*Id.* ¶ 40.)  Therefore, during this Pay Period, Plaintiff worked 10 hours of overtime every week.  Although the Complaint does not allege an exact date when Plaintiff's schedule changed, the damages chart provided by Plaintiff uses April 15, 2019 as the basis for its calculations,

presumably because it is the midpoint of the month. (Exhibit I to Faillace Decl., Damages Chart ("Damages Chart"), at 1, Dkt. 16-9.) The undersigned finds this approach reasonable and finds the length of this Pay Period to be ten weeks.

Plaintiff alleges that from April 2019 until on or about May 5, 2019, he worked approximately 51.64 to 53 hours per week. (Compl. ¶ 41.) Because there is a range of hours Plaintiff is alleged to have worked per week, the undersigned uses the average of these two numbers to arrive at 52.32 as the number of hours he worked each week. During this Pay Period of three weeks, Plaintiff's overtime hours is calculated to be 12.32 hours per week.

Plaintiff asserts that he was paid a fixed salary of $700 per week for the first week and $600 per week thereafter until the end of his employment, and that his pay did not vary based on the hours he worked. (*Id.* ¶¶ 43-45.) Under New York regulations, the regular rate of pay for hospitality industry employees, including restaurant employees who are not paid on an hourly basis is calculated by "dividing the employee's total weekly earnings . . . by the *lesser* of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. 146-3.5 (emphasis added). Since Plaintiff worked more than 40 hours a week consistently throughout his employment, the undersigned divides Plaintiff's weekly earnings ($700 per week for the first week and $600 per week for the rest of his employment) by 40 hours to determine his regular rate of pay. Accordingly, Plaintiff's regular rate of pay for the first week of employment was $17.50 per hour, and for all the other weeks, it was $15 per hour. The corresponding overtime rates are $26.25 per hour, and $22.50 per hour. *See Nakahata*, 723 F.3d 192 at 200.

This overtime rate is multiplied by the number of overtime hours worked per week to arrive at the overtime pay due each week. This is then multiplied by the number of weeks in each Pay Period.

The following chart summarizes the numbers used to reach this total calculation:

| Pay Period | No. of Weeks in Pay Period | Hours Worked per Week | OT Hours Worked per Week | Regular Rate of Pay | OT Rate of Pay | Unpaid OT per Week | Total unpaid OT for pay period |
|---|---|---|---|---|---|---|---|
| 1/28/19- 2/4/19 | 1 | 60.5 | 20.5 | $17.50/hr | $26.25 | $538.13 | $538.13 |
| 2/5/19- 4/15/19 | 10 | 50 | 10 | $15/hr | $22.50 | $225.00 | $2,250.00 |
| 4/16/19- 5/5/19 | 3 | 52.32 | 12.32 | $15/hr | $22.50 | $277.20 | $831.60 |
| | | | | | | Total: | **$3,619.73** |

Accordingly, the undersigned recommends that Plaintiff be awarded a total of **$3,619.73** for unpaid overtime wages.

### 2.    Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663.  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages.  29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).

Since Defendants failed to respond to the Complaint or Motion, no good faith exists, and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

A plaintiff can recover "one hundred percent of the total amount of wages found to be due."  N.Y. Lab. Law § 198(1-a).  Since Plaintiff may not recover liquidated damages under both the NYLL and FLSA, *see Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary order); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017), and the damages under FLSA and NYLL are the same, the undersigned

recommends awarding Plaintiff **$3,619.73** in liquidated damages under the NYLL, an amount which is equal to the unpaid overtime wages.

### 3. Interest

Plaintiff seeks pre-judgment interest.  (Mem. of Law at 5-6.)  Since "liquidated damages and pre[-]judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  *Saucedo*, 2016 WL 8376837, at *16.  Courts have the discretion to determine a reasonable date from which to award pre-judgment interest, such as "the earliest ascertainable date the cause of action existed" or a midway point between when the plaintiff began and ended work if damages were incurred at various times.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Because Plaintiff never received overtime pay throughout his employment, the Court will use an intermediate date:

| Start Date | End Date | Midpoint | Midpoint to End Date |
|---|---|---|---|
| 1/28/2019 | 5/5/2019 | 3/17/2019 | 50 days |

The statutory rate for pre-judgment interest is nine percent per annum. N.Y. C.P.L.R. § 5004.

| Total Wage Damages | 9% of Wage Damages | 9% of Wage Damages / 365 (Daily Interest) | Daily Interest x Midpoint to End Date |
|---|---|---|---|
| $3,619.73 | $325.78 | $0.89 | $0.89 x 50 days **$44.50** |

Therefore, the undersigned respectfully recommends Plaintiff be awarded pre-judgment interest in the amount of $44.50 for the time during his employment.  Additionally, the undersigned respectfully recommends that Plaintiff be awarded pre-judgment interest from the end-date of his employment to the date of this Report and Recommendation in the amount of $397.83, for a total of **$442.33**.

| Daily Interest | End Date | End Date to R&R (7/24/2020) | Pre-Judgment Interest to R&R |
|---|---|---|---|
| $0.89 | 5/5/2019 | 447 days | $0.89 x 447 days **$397.83** |

Finally, the undersigned respectfully recommends that Plaintiff be awarded additional pre-judgment interest from the date after this Report and Recommendation through the date judgment is entered at the rate of $0.89 per day.

Both 28 U.S.C. § 1961 and N.Y. C.P.L.R. § 5003 allow for the award of post-judgment interest. Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961. *See Tacuri v. Nithun Constr. Co.,* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### 4.       Wage Statement and Notice

Plaintiff alleges violations of Sections 195(1) and 195(3) of the NYLL, the statute's wage notice and statement provisions. (Compl. ¶¶ 87-92.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of Section 195(1) carry damages of $50 per workday for a maximum of $5,000. N.Y. Lab. Law § 198(1-b).

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked. After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday for a maximum of $5,000. N.Y. Lab. Law § 198 (1-d).

Here, Plaintiff alleges he never received a wage notice or statement from Defendants at any point throughout the course of his employment. (*See* Exhibit H to Faillace Decl., Declaration of Faustino Morales Miranda, ¶¶ 15-17, Dkt. 16-8.)

Under Section 195(1), damages for violations accrue at a rate of $50 per workday. Plaintiff requested damages of $4,200 under this section, accounting for 84 workdays. (*See* Faillace Decl. ¶ 47; Damages Chart at 2.) While the total of all the workdays alleged in the Complaint is 85, the dates provided were approximate rather than specific. (Compl. ¶¶ 39-41) (alleging that Plaintiff worked from "approximately January 20, 2019" "until on or about May 5, 2019".) Accordingly, the undersigned recommends awarding Plaintiff's requested amount of $4,200 under Section 195(1). Additionally, Plaintiff is entitled to recover the maximum statutory damages of $5,000 under 195(3). *See, e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2019 WL 3244187, at *5 (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days after February 27, 2015).

Accordingly, in total, the undersigned recommends that Plaintiff be awarded **$9,200** in statutory damages for wage statement and notice violations.

### 5.    Automatic Increase in Judgment

Plaintiff requests that the judgment provide, in accordance with New York Labor Law § 198(4), that the total amount of judgment shall increase automatically by fifteen percent under the conditions laid out in the statute. (Mem. of Law at 6.)

> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y.L.L. § 198(4).

While this language directly follows a provision stating, "[i]n any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorney's fees and costs incurred in enforcing any court judgment," "many decisions in this Circuit have interpreted this provision to apply to the total amount of the judgment." *Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019) (citing *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, 2017 WL 7625319, at *4 (E.D.N.Y. Nov. 7, 2017)). Accordingly, the undersigned finds that Plaintiff is entitled to have the automatic fifteen percent increase apply to the entire award under the NYLL, not just fees and costs incurred in enforcing the judgment.

Furthermore, the undersigned finds that use of the word "shall" in the statute imposes a requirement that the judgment include the language of the fifteen percent increase. *See Maine Cmty. Health Options v. United States*, 140 S.Ct. 1308, 1320 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement") (citation omitted). Other courts in this district have included the language of the provision without much additional discussion. *See, e.g.*, *Rigoberto Manzanares v. Your Favorite Auto Repair & Diagnostic Center, Inc.*, No. 17-CV-5001 (MKB) (RML), 2018 WL 6718766, at *12 (E.D.N.Y. Nov. 7, 2018), *R&R adopted*, 2018 WL 6517111 (E.D.N.Y. Dec. 11, 2018); *Thomas v. Good Vision Taste Inc.*, No. 17-CV-6084 (FB) (LB), 2018 WL 4268909, at *9 (E.D.N.Y. Apr. 17, 2018), *R&R adopted as modified*, 2018 WL 4265868 (E.D.N.Y. Sept. 5, 2018); *Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *14 (E.D.N.Y. Feb. 6, 2018), *R&R adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). While it could be argued that it is unnecessary or indeed premature to include language in a judgment premised on an action that has not yet occurred, *see Olvera v. Los Taquitos Del Tio Inc.*, No. 15-CV-1262 (BMC), 2015 WL 3650238, at *2 (E.D.N.Y. June 11, 2015) (declining to include the provision and permitting plaintiff to "apply for an amended judgment to reflect th[e] increase ninety days

17

thereafter"), inclusion of the statutory language in the judgment now serves the additional purpose of putting Defendants on notice that the total amount of judgment awarded under the NYLL will increase if they do not act to pay the judgment within the stated deadlines.

Accordingly, although the automatic increase is contingent on conditions that have not yet been met, the undersigned respectfully recommends that this provision be included in the judgment.

## IV.   Attorneys' Fees and Costs

### A.        Attorneys' Fees

Plaintiff's counsel seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 663(1).  District courts have broad discretion to determine the amount awarded, and the burden rests on the party requesting fees to provide documentation to support its claims.  *Mahoney*, 2016 WL 6585810, at *18.  Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  *Saucedo*, 2016 WL 8376837, at *16.  This "lodestar method" may be adjusted based on the circumstances of the case.  *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Saucedo*, 2016 WL 8376837, at *16-17.  The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19.  Courts in this District have held reasonable hourly rates in FLSA cases to be "approximately $300-450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Mahoney*, 2016 WL 6585810, at *19 (quotations omitted) (quoting *Carrasco-Flores v. Comprehensive*

18

*Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014)).

In support of the request, Plaintiff's counsel submitted a contemporaneous attorney timesheet and brief backgrounds on the attorneys and legal staff who did work in this case.  (Exhibit J to Faillace Decl. ("Ex. J"), Dkt. 16-10; Faillace Decl. ¶ 55.)  Plaintiff requests a rate of $450 per hour for Mr. Faillace, $250 per hour for Mr. Naydenskiy, and $100 per hour for unnamed paralegals. (Faillace Decl. ¶ 55(a)-(c).)

Mr. Faillace's $450 hourly rate is within the bounds of hourly rates traditionally held to be reasonable for partners in this District as discussed *supra*, albeit at the upper end of that range. However, despite Mr. Faillace's extensive experience in the field, "awarding fees at the higher end of this scale . . . is inappropriate given the default posture of this case."  *Lopez*, 2018 WL 1770660, at *13.  Additionally, this hourly rate exceeds the hourly rate Mr. Faillace has been awarded in other recent cases with similar procedural posture in the Eastern District of New York.  *See Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964 (FB) (JO), 2020 WL 1364908, at *8 (E.D.N.Y. Mar. 6, 2020), *R&R adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020) (awarding Mr. Faillace $375 per hour in an FLSA default judgment case); *Ortiz v. Red Hook Deli & Grocery 2015 Corp.*, No. 17-CV-7095 (RRM), 2019 WL 4739047, at *13 (E.D.N.Y. June 12, 2019), *R&R adopted*, 2019 WL 4741626 (E.D.N.Y. Sept. 26, 2019) (same); *Santillan*, 822 F. Supp. 2d at 300 (same); *see also Baizan Guerrero*, 2019 WL 4889591, at *12 (awarding Mr. Faillace $350 in an FLSA default judgment case); *Lopez*, 2018 WL 1770660, at *13 (same).  Accordingly, the undersigned recommends Mr. Faillace's hourly rate be reduced to $375 per hour.

Mr. Naydenskiy has been in practice for six years and joined Mr. Faillace's firm in 2018.  (*See* Faillace Decl. ¶ 55(ii).)  His requested $250 hourly rate is within the bounds of hourly rates traditionally awarded in this District for associates of comparable experience.  *See Lopez v. PMMT*

*Inc.*, No. 14-CV-2057 (FB) (VMS), 2016 WL 7633264, at *15 (E.D.N.Y. Aug. 25, 2016), *R&R adopted*, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (recognizing reasonable hourly rates for senior associates range from $200 to $300).  However, given the relatively straightforward nature of a default judgment case, the undersigned recommends Mr. Naydenskiy's hourly rate be reduced to $200.  *See Sermuks v. Orion Caterers, Inc.*, No. 15-CV-6461 (RJD) (RML), 2017 U.S. Dist. LEXIS 15846, at *22 (E.D.N.Y. Feb. 2, 2017), *R&R adopted*, 2017 U.S. Dist. LEXIS 26555 (E.D.N.Y. Feb. 23, 2017) (recommending Mr. Naydenskiy's hourly rate be reduced to $200 in an FLSA default judgment case).

Plaintiff also requests $100 per hour for the paralegals who worked on the case, but does not provide any additional information about their qualifications.  (Faillace Decl. ¶ 55(iii).)  Therefore, the undersigned recommends a rate of $60 per hour for the paralegal staff.  *See Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859 (RRM) (PK), 2018 WL 1545699, at *11 (E.D.N.Y. Mar. 14, 2018), *R&R adopted*, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018) (recommending $60 per hour for paralegal with no information provided).

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours."  *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  Over the course of seven months, Mr. Faillace billed a total of 1.7 hours, Mr. Naydenskiy billed a total of 0.8 hours, and the paralegals billed a total of 7.65 hours.  (*See* Ex. J.)  Upon examining the attorney timesheet, the undersigned finds the total hours billed reasonable.

Adjusting Mr. Faillace's, Mr. Naydenskiy's, and the paralegals' hourly rates to $375, $200, and $60 respectively reduces the amount billed to $637.50, $160, and $459.00.  Therefore, the total amount of attorneys' fees is reduced to $1,256.50.

**B.**     **Costs**

Plaintiff is entitled to recover reasonable costs under the FLSA and the NYLL.  *See* 29

U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez*, 2016 WL 1359218, at *8.  A summary of costs

indicates that counsel spent a total of $618.00, consisting of the $400.00 filing fee and the service of

process fees.  (Ex. J at 2.)  The undersigned finds these costs reasonable.

Accordingly, the undersigned recommends an award of **$1,256.50** in attorneys' fees and

**$618.00** in costs.

<u>**CONCLUSION**</u>

Based on the foregoing, the undersigned respectfully recommends that a default judgment

be entered against Defendants, and that Plaintiff be awarded damages in the total sum of **$18,756.29**

comprised of:

(i)     **$3,619.73** in unpaid overtime wages;

(ii)    **$3,619.73** in liquidated damages;

(iii)   **$442.33** in pre-judgment interest to the date of this Report and Recommendation;

(iv)    **$4,200** in statutory damages for the NYLL wage notice claim;

(v)     **$5,000** in statutory damages for the NYLL wage statement claim;

(vi)    **$1,256.50** in attorneys' fees; and

(vii)    **$618.00** in costs.

Additionally, the undersigned recommends that Plaintiff be awarded:

(i)     **Daily interest in the amount of $0.89 per day**, calculated from July 25, 2020,

through the date judgment is entered;

(ii)    **Post-judgment interest** at the rate set forth in 28 U.S.C. § 1961; and

(iii)   **An automatic 15% increase in the total amount of judgment** "if any amounts

remain unpaid upon the expiration of ninety days following issuance of judgment, or

ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later," pursuant to N.Y.L.L. § 198(4).

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by July 30, 2020.  Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection may waive the right to appeal the District Court's Order.  *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
              July 24, 2020